IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEMORA GRAY, | ) | |
| | ) | No. 14 C 7101 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Order**

Plaintiff Semora Gray ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. We grant Plaintiff's motion for summary judgment and deny the Commissioner's motion for summary judgment. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

**Statement**

Plaintiff is a former commercial union painter and parking lot toll booth operator who applied for disability insurance benefits and supplemental security income on December 2, 2011. Administrative Record ("A.R.") 140, 146. She alleged in her initial application that she has been disabled since August 1, 2011, due to a combination of physical and mental impairments, including a rotator cuff tear in her left shoulder, lymphadenopathy, obesity, hypertension, depression, allergic conjunctivitis, cervical radiculopathy, chest pain, hyperlipidemia, and

gastroesophageal reflux disease. *See* A.R. 168. Her application for disability benefits was denied by the Social Security Administration ("Administration") on March 21, 2012. A.R. 80. The Administration acknowledged that Plaintiff's impairments somewhat restricted her functional capabilities, but it determined that she was still able to perform light work and could return to her previous position as a toll booth operator. A.R. 80. Plaintiff requested reconsideration of the Administration's decision, which was denied on July 16, 2012. A.R. 91. After her reconsideration request was denied, Plaintiff on August 30, 2012, requested a hearing in front of an Administrative Law Judge ("ALJ") to again appeal the Administration's decision. A.R. 101. Her request was granted, and a hearing was held on September 18, 2013. A.R. 37.

The ALJ affirmed the Administration's denial of Plaintiff's application for disability benefits, holding that Plaintiff was not disabled under the Social Security Act during the period from August 1, 2011, through November 12, 2013, the date of decision. A.R. 17. The ALJ found that Plaintiff had several severe impairments, including left shoulder partial thickness rotator cuff tear with bursitis and tendinosis, status post left shoulder rotator cuff repair, asthma, and obesity. A.R. 19. These impairments were labeled severe because they "more than minimally limit[ed] [Plaintiff's] ability to perform basic work activities." A.R. 19. The ALJ also found that Plaintiff had several non-severe impairments, including hypertension, urinary incontinence, cervical degenerative impairment in her neck, and depression. A.R. 19-20. These impairments were designated non-severe because they individually did not cause any more than a minimal limitation on Plaintiff's ability to perform basic mental and physical work activities. A.R. 19-20. Finally, the ALJ rejected Plaintiff's claim that she suffers from anxiety. A.R. 20. Although the record contains evidence that Plaintiff suffers from anxiety, the ALJ stated that the diagnosis was made by a physician's assistant and a social worker, which he did not consider "medically

acceptable source[s]." A.R. 20. The ALJ further stated that "[r]ecords from physicians frequently deny any signs of anxiety disorders." A.R. 20. The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. A.R. 20-22.

The ALJ determined that Plaintiff's residual functional capacity ("RFC") allowed her to perform light work, but that her impairments limited her ability to complete certain tasks. A.R. 22-23. For example, Plaintiff was able to lift and carry 10 pounds frequently, but could lift and carry 20 pounds only occasionally. A.R. 22. Similarly, Plaintiff was unable to work at heights or climb ladders and should avoid concentrated exposure to fumes, dusts, odors, gases, and poorly ventilated areas. A.R. 23. The ALJ also stated that Plaintiff was able to stand, walk, or sit for about six hours of an eight-hour workday, but only if she was given normal rest breaks, and that she was able only occasionally to balance, kneel, or crawl. *See* A.R. 22-23. Based on the relevant medical evidence, the testimony of the vocational expert, and his own assessment of Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff was able to return to her past occupation as a parking lot cashier. A.R. 28.

After the ALJ's unfavorable ruling, Plaintiff appealed to the Appeals Council of the Office of Disability Adjudication and Review, which denied her request for review. A.R. 1. Plaintiff then appealed to this Court pursuant to 42 U.S.C. § 405(g). Pl. Brief at 1.

**Discussion**

Plaintiff brings multiple claims on appeal. First, she alleges that the ALJ cherry-picked the opinion evidence when making his decision, which resulted in erroneous findings of Plaintiff's RFC and of witness credibility. Second, she alleges that the ALJ relied upon flawed and incomplete vocational expert testimony in reaching his decision. Pl. Brief 1. In response, the

Commissioner argues that substantial evidence supports the ALJ's RFC findings, that substantial evidence supports the ALJ's witness credibility findings, and that the ALJ did not err in considering the vocational expert's testimony. *See generally* Def. Brief. We consider each issue in turn.

## I. Standard of Review

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, if it is supported by substantial evidence, and if it is free of legal error. *See* 20 C.F.R §§ 404.1520(a), 416.920(a); 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although we review the ALJ's decision deferentially, he must nevertheless build a "logical bridge" between the evidence and his conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). This standard is satisfied even if the ALJ makes only a "minimal[] articulat[ion] of [his] justification." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## II. Plaintiff's Residual Functional Capacity Claims

Plaintiff claims that on three specific occasions the ALJ cherry-picked opinion evidence and failed to build a logical bridge between the medical evidence and his RFC determination. First, Plaintiff argues that the ALJ's RFC determination is incorrect because it does not provide any limitations on Plaintiff's use of her left shoulder, despite the ALJ's classification of those shoulder impairments as severe. Pl. Brief 10. Second, Plaintiff argues that the ALJ erred in failing to build a logical bridge between Plaintiff's mental impairments and his RFC determination. *See* Pl. Brief 10. Third, Plaintiff argues that the ALJ erred in holding that her urinary incontinence is non-severe, and alternatively, that even if her incontinence is non-severe

4

the ALJ failed to incorporate the impairment into his RFC determination. We agree with Plaintiff's second and third claims and remand for further consideration.[1]

**A. Plaintiff's Mental Impairments**

Plaintiff claims that the ALJ should have found that her major depressive disorder and generalized anxiety disorder constitute severe psychiatric impairments, and that those disorders should have been incorporated into the ALJ's RFC finding. Pl. Brief 10, Reply Brief 5. We disagree with Plaintiff's allegations of error regarding her anxiety disorder, but we agree that the ALJ erred in failing to incorporate Plaintiff's depression-related mental limitations into his RFC determination.

An ALJ's severity determination must be upheld if it is supported by substantial medical evidence. *See* 42 U.S.C. 405(g). Here, substantial medical evidence supports the ALJ's conclusion that Plaintiff's depression is non-severe. We agree, however, with Plaintiff's claim that the ALJ erred in failing to incorporate Plaintiff's depression into his RFC determination. *See* Reply Brief 5. Once the ALJ determined that Plaintiff suffered from a combination of severe impairments, he was obligated to "consider the *aggregate* effect of [Plaintiff's] entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). In other words, regardless of the severity of Plaintiff's depression, the ALJ still should have considered that impairment when evaluating Plaintiff's residual functional capacity, because he had already determined that Plaintiff suffered from a combination of severe impairments. While the ALJ "need not provide a complete written evaluation of every piece of testimony and evidence," *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012), he still must "provide a logical bridge from

---

[1] Since we are remanding on Plaintiff's second and third RFC claims, we will not address her left shoulder claim.

the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [Plaintiff] meaningful judicial review," *Moore*, 743 F.3d at 1121. Here, the ALJ did not address Plaintiff's depression or mental limitations at all when making his RFC finding. The issue is remanded for further consideration, where the ALJ must build the "logical bridge" between his finding that Plaintiff suffers from depression and his determination of Plaintiff's residual functional capacity.[2]

**B. Plaintiff's Incontinence Impairment**

Plaintiff also alleges that the ALJ incorrectly held that Plaintiff's urinary incontinence does not constitute a severe impairment, or alternatively, that if the ALJ correctly found her incontinence non-severe he erred in failing to consider the impairment in making his RFC determination. Pl. Brief 11; Reply Brief 6-7. We agree with Plaintiff's assertion that the ALJ committed reversible error by failing to incorporate Plaintiff's incontinence into his RFC determination.

Again, the ALJ does not need to address every piece of evidence in the record when making his RFC determination, but he still must build "a logical bridge from the evidence to the conclusions." *Moore*, 743 F.3d at 1121. Here, no such bridge exists. The record shows that Plaintiff has complained of incontinence since at least June 2013. A.R. 650. Plaintiff testified at her hearing that her incontinence makes her "go[] quite a bit, 15 minutes, 10 minutes." A.R. 67.[3] When the ALJ asked Plaintiff how her condition would affect her ability to remain on task at work, Plaintiff testified that she would need between 10 and 15 additional restroom breaks every

---

[2] We will not address Plaintiff's claim that the ALJ relied on incomplete vocational expert testimony regarding Plaintiff's mental limitations until the ALJ has had the opportunity to incorporate Plaintiff's depression into his RFC determination.

[3] It is not clear from the context whether Plaintiff meant that her incontinence requires her to use the restroom more frequently (*i.e.*, she goes "*every* 15 minutes, 10 minutes") or whether she meant that her incontinence increases the duration of her restroom visits (*i.e.*, she "*goes for* 15 minutes, 10 minutes").

day, beyond the normal breaks that the ALJ referred to in his RFC finding. A.R. 67.[4] Plaintiff's testimony was corroborated by the statutorily-required medical signs, *see* 20 C.F.R. 404.1529, including statements and assessment notes from Plaintiff's physicians indicating that Plaintiff's claims about her incontinence are legitimate, *see* A.R. 650, 681, 691; records indicating that Plaintiff suffers from asthma and experiences harsher bouts of incontinence whenever she sneezes or coughs, A.R. 650, 681; Plaintiff's own testimony that she wears incontinence undergarments, A.R. 67; records indicating that Plaintiff takes medication to treat her incontinence, which has been increased at least once since the initial diagnosis, A.R. 67, 681; and a statement from Dr. Diaz-Jimenez, Plaintiff's primary care physician, stating that Plaintiff "can not [*sic*] control her bladder," A.R. 691. This evidence suggests that Plaintiff's incontinence more than minimally limits her ability to remain on task at work.

In any case, regardless of the ALJ's severity determination of Plaintiff's incontinence, he had already established that Plaintiff suffers from several severe impairments, *see* A.R. 19, and so was obligated to consider "the *aggregate* effect of [Plaintiff's] entire constellation of ailments," *Golembiewski*, 322 F.3d at 918. Since the ALJ did not discuss Plaintiff's incontinence at all in his RFC determination, *see* A.R. 22-28, the issue is remanded for further consideration.[5]

## Conclusion

Plaintiff's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

---

[4] The exact phrasing of the ALJ's question was, "Do you need—how many *extra* breaks do you think you would need during the day if you were working, somewhere working as a toll booth operator?" A.R. 67 (emphasis added).

[5] We will not address Plaintiff's claim that the ALJ relied on incomplete vocational expert testimony regarding Plaintiff's incontinence until the ALJ has had the opportunity to incorporate Plaintiff's incontinence-related limitations into his RFC determination.

**ENTER: 4/4/2016**

_____
**U.S. Magistrate Judge, Susan E. Cox**